BRYAN, Judge.
 

 Mary Bourgeois, the plaintiff below, appeals from a judgment insofar as it found in favor of two of the defendants below, Styx, L.L.C. (“Styx”), and Louie Hughes, an agent of Styx. We affirm in part, reverse in part, and remand.
 

 On April 4, Bourgeois, who is a real-estate agent, and Styx entered into an agreement titled “Real Estate Sales Contract” (“the original contract”). Hughes signed the original contract only in his capacity as an agent of Styx; he did not sign the original contract in his individual capacity. The original contract stated, in pertinent part:
 

 “The undersigned purchaser, Styx, L.L.C. and/or its assigns, hereby agrees to purchase and the undersigned seller, Mary Bourgeois, agrees to sell the following described real estate, together with all improvements, shrubbery, fixtures and appurtenances, situated in the County of Baldwin, Alabama, on the terms stated below:
 

 [[Image here]]
 

 “1. The Purchase Price shall be $273,510.00, payable as follows:
 

 “Earnest money $5,000.00
 

 “Cash on Closing balance of purchase price
 

 “Contingent upon:
 

 “a. [Styx’s] ability to obtain a 20 year conventional mortgage in the amount of the purchase price bearing an interest rate not to exceed 6.75% computed monthly, on or before the date the sale is to be closed, which [Styx] agree[s] to apply for immediately and accept promptly if tendered....
 

 “b. [Styx’s] approval of a title commitment to be obtained within five days of the date of this contract for its review.
 

 [[Image here]]
 

 “6. Condition of the Property: It shall be the responsibility of [Styx], at [Styx’s] expense, to satisfy itself that all conditions of this contract are satisfied before closing. After closing, all condi
 
 *1198
 
 tions of the property are the responsibility of [Styx].
 

 “7. Escrow: In the event the proposed sale does not take place due to a default by [Bourgeois], [Styx] is entitled to a full refund of the $5,000.00 paid into escrow and held by Plantation Title Company. In the event of a default by [Styx], [Bourgeois] shall be entitled to retain the sums held in escrow as liquidated damages.
 

 “8. Other terms or conditions:
 

 “a. Styx LLC will have a 45 day due diligence period beginning from date of contract. Closing will be within 8 days of the completion of due diligence or after the due diligence period, which ever comes first. Must close on or before May 26, [20]08.
 

 [[Image here]]
 

 “c. In the event [Bourgeois] receives a bona fide offer to purchase during the period of due diligence, Styx, LLC shall have a right of first refusal to match that offer. If Styx, LLC exercises that right, closing must take place within fifteen days. If Styx, LLC fails to close within 15 days, [Bourgeois] shall be entitled to the escrow deposit as liquidated damages.”
 

 Styx paid the $5,000 in earnest money to Plantation Title Company, Inc. (“Plantation”), to be held in escrow, began investigating the property to determine whether it was suitable for the use that Styx intended to make of it, and obtained satisfactory financing.
 

 Several days before May 19, 2008, the last day of the 45-day period the original contract had specified for Styx to complete its investigation of the property, Styx requested that Bourgeois agree to extend the time for Styx to complete that investigation. After Bourgeois and Styx had exchanged several drafts of a proposed extension agreement, Bourgeois and Hughes signed an agreement titled “Extension of Real Estate Sales Contract” (“the extension agreement”) on May 17, 2008. Hughes signed the extension agreement only in his capacity as an agent of Styx; he did not sign it in his individual capacity. The extension agreement stated:
 

 “The undersigned parties to the real estate contract dated April 4, 2008, hereby acknowledge that it is necessary for [Styx] to have additional time to complete its due diligence in order to close on the property and therefore agree to extend period of due diligence to June 18, 2008 and closing shall take place no later than June 26, 2008.
 

 “Due diligence must be completed and acceptance on completion by [Styx] given to [Bourgeois] in writing no later than June 18, 2008.
 

 “In consideration of the above extension, [Styx] shall pay $5,000.00 as an additional escrow deposit to Plantation Title Company upon receipt of the signed extension and provide proof of payment to [Bourgeois]. As of May 16, 2008 the total deposit held by Plantation Title is $10,000.00.
 

 “Upon the expiration of the due diligence period [on] June 18, 2008 and provided that [Styx] is satisfied with its findings and information, at that time the sums held in escrow will become non-refundable.
 

 “All other terms of the contract shall remain in full force and effect.”
 

 Styx completed its investigation of the property before June 18, 2008, and determined, based on information it had gathered during its investigation, that the property was not suitable for the use Styx had intended to make of the property; however, Styx did not communicate its decision to Bourgeois until Styx’s attorney sent Bourgeois a letter informing her of
 
 *1199
 
 Styx’s decision not to buy the property on June 20, 2008. Also on June 20, Bourgeois sent Plantation a letter notifying it that Hughes and Styx “did not comply with the terms of the contract extension agreement and failed to submit in writing its findings and information on or before June 18, 2008,” and requesting that it “retain the deposit in the amount of $10,000” until Bourgeois’s attorney had spoken with Styx’s attorney. Plantation subsequently informed Bourgeois that Styx had not deposited with Plantation the $5,000 required by the extension agreement.
 

 Although Bourgeois had maintained a for-sale sign on the property from April 4, 2008, through June 20, 2008, she did not receive any other offers to buy the property during that period.
 

 On September 9, 2008, Bourgeois sued Hughes, Styx, and Plantation, seeking damages based on claims of breach of contract, misrepresentation, and suppression. In addition, she sought a declaratory judgment regarding the rights of the parties with respect to the earnest money and an order compelling Plantation to interplead the earnest money.
 

 Hughes, Styx, and Plantation denied liability, and the action proceeded to trial.
 
 [1]
 
 After hearing ore tenus evidence in a bench trial, the trial court entered a judgment finding in favor of Hughes, Styx, and Plantation without stating its rationale. Bourgeois filed a postjudgment motion, which the trial court denied. Bourgeois then timely appealed the judgment as to Hughes and Styx to this court. Because the appeal was within the supreme court’s jurisdiction, we transferred it to the supreme court. The supreme court then transferred the appeal back to this court pursuant to § 12-2-7(6), Ala.Code 1975.
 

 Because the trial court received ore tenus evidence, our review is governed by the following principles:
 

 “ ‘ “ ‘[Wjhen a trial court hears ore tenus testimony, its findings on disputed facts are presumed correct and its judgment based on those findings will not be reversed unless the judgment is palpably erroneous or manifestly unjust.’ ” ’
 
 Water Works & Sanitary Sewer Bd. v. Parks,
 
 977 So.2d 440, 443 (Ala.2007) (quoting
 
 Fadalla v. Fadalla,
 
 929 So.2d 429, 433 (Ala.2005), quoting in turn
 
 Philpot v. State,
 
 843 So.2d 122, 125 (Ala.2002)). ‘ “The presumption of correctness, however, is rebuttable and may be overcome where there is insufficient evidence presented to the trial court to sustain its judgment.” ’
 
 Waltman v. Rowell,
 
 913 So.2d 1083, 1086 (Ala.2005) (quoting
 
 Dennis v. Dobbs,
 
 474 So.2d 77, 79 (Ala.1985)). ‘Additionally, the ore tenus rule does not extend to cloak with a presumption of correctness a trial judge’s conclusions of law or the incorrect application of law to the facts.’
 
 Waltman v. Rowell,
 
 913 So.2d at 1086.”
 

 Retail Developers of Alabama, LLC v. East Gadsden Golf Club, Inc.,
 
 985 So.2d 924, 929 (Ala.2007).
 

 Bourgeois first argues that the trial court erred in finding in favor of Hughes and Styx insofar as Bourgeois claimed that Hughes and Styx had breached the original contract by failing to complete their investigation of the property by May 19, 2008, and by failing to close the sale by May 26, 2008, because, she says, Hughes and Styx’s failure to complete their investigation of the property and their failure to close the sale by the deadlines specified in the original contract were not excused by the extension agreement because, Bour
 
 *1200
 
 geois says, the extension agreement did not become a binding contract due to Hughes and Styx’s failure to deposit with Plantation the $5,000 required by the extension agreement. Bourgeois’s first argument has no merit with respect to Hughes because he was not a party to the original contract; he signed the original contract only in his capacity as an agent of Styx.
 
 See Southern Med. Health Sys., Inc. v. Vaughn,
 
 669 So.2d 98, 99 (Ala.1995) (“In the ordinary breach of contract action, the claimant must prove: (1) the existence of a valid contract
 
 binding the parties
 
 in the action, (2) his own performance under the contract, (3) the defendant’s nonperformance, and (4) damages.” (emphasis added)).
 

 Bourgeois’s first argument has no merit with respect to Styx because the consideration for the extension agreement consisted of mutual promises by Bourgeois and Styx. Bourgeois promised to extend the time for Styx to investigate the property and to close the sale, and Styx promised to deposit an additional $5,000 with Plantation. It was Styx’s promise to deposit the additional $5,000 with Plantation rather than its performance of that promise that constituted the consideration for Bourgeois’s promise.
 
 See
 
 17A Am.Jur.2d
 
 Contracts
 
 § 128 (2004) (“Mutual promises are generally held to be sufficient consideration for each other; a promise by one party to an agreement is sufficient consideration for a promise by the other party. This rule applies in cases of plainly expressed promises, of promises implied from conduct, and of promises ascertained only by a proper interpretation of the contract.
 
 It is the promise, and not the performance of the promise, that constitutes the consideration for the promise. Therefore, nonperformance of a promise that was the consideration for another promise does not constitute want of consideration, although it may be grounds for an action for damages.”
 
 (emphasis added; footnotes omitted)). Therefore, the extension agreement was a binding contract that extended the time for Styx to complete its investigation of the property and to close the sale. Accordingly, the trial court did not err in finding in favor of Hughes and Styx insofar as Bourgeois claimed that they had breached the original contract.
 

 Bourgeois also argues that the trial court erred in finding in favor of Hughes and Styx insofar as Bourgeois claimed that they had breached the extension agreement by failing to deposit an additional $5,000 with Plantation as required by the extension agreement and by failing to notify her that Styx had determined that the property was unsuitable on or before June 18, 2008. The trial court did not err in finding in favor of Hughes with respect to that claim because Hughes was not a party to the extension agreement; he signed the extension agreement only in his capacity as an agent of Styx.
 
 See Southern Med. Health Sys., Inc. v. Vaughn,
 
 669 So.2d at 99.
 

 We conclude that the trial court did not err insofar as it found in favor of Styx with respect to Bourgeois’s claim that Styx breached the extension agreement by failing to notify Bourgeois that Styx had determined that the property was unsuitable on or before June 18, 2008, because the plain terms of the extension agreement required Styx to give Bourgeois notice by June 18, 2008, only if Styx had determined that the property was suitable, an eventuality that did not occur.
 

 However, we conclude that the trial court did err insofar as it found that Styx had not breached the extension agreement by failing to deposit an additional $5,000 with Plantation as required by the extension agreement, although we further conclude that Bourgeois did not suffer any
 
 *1201
 
 actual damage because the condition precedent to the earnest money becoming nonrefundable did not occur. The extension agreement provided that the earnest money would become nonrefundable only if “[Styx] is satisfied with its findings and information” regarding the property. The undisputed evidence established that Styx was not satisfied with its findings and information regarding the property, and, therefore, the earnest money did not become nonrefundable. Consequently, Bourgeois is entitled to recover only nominal damages for Styx’s failure to deposit an additional $5,000 with Plantation.
 
 See Roberson v. C.P. Allen Constr. Co.,
 
 [Ms. 2080537, Jan. 29, 2010] (Ala.Civ.App.2010). In
 
 Roberson v. C.P. Allen Constr. Co.,
 
 this court stated:
 

 “Under Alabama law, an award of nominal damages is proper when a defendant breached a contract but the plaintiff either suffered no actual damage or failed to prove actual damage.
 
 James S. Kemper & Co. [v. Cox & As
 
 socs.], 434 So.2d [1380,] at 1385 [(Ala.1983) ]. Nominal damages are not based on the extent of any loss sustained by the breach but are awarded in recognition for the invasion of the legal rights of the plaintiff.
 
 See Avis Rent-A-Car Sys., Inc. v. Heilman,
 
 876 So.2d 1111, 1120 (Ala.2003). Alabama law has not heretofore established any limit on the amount that can be awarded as nominal damages, but, by their very nature, such damages are intended to be ‘[a]
 
 trifling
 
 sum awarded when a legal injury is suffered but when there is no substantial loss or injury to be compensated’ or ‘[a]
 
 small
 
 amount fixed as damages for breach of contract without regard to the amount of harm.’
 
 Black’s Law Dictionary
 
 418 (8th ed.2004) (emphasis added);
 
 see also Williams v. Citizens Bank of Guntersville,
 
 350 So.2d 1031, 1033 (Ala.1977) (recognizing, in dicta, that nominal damages are ‘“a small sum fixed, without regard to the extent of harm done, by the custom of the jurisdiction in which the action is brought” ’ (quoting
 
 Corbin on Contracts,
 
 Vol. 5, § 1001, p. 29-30, and citing
 
 Kelly v. Fahrney,
 
 97 F. 176 (C.C.W.D.Ark.1899)));
 
 Zok v. Alaska,
 
 903 P.2d 574, 578 (Alaska 1995) (‘Nominal damages are by definition minimal monetary damages.’). Nominal damages definitely are not intended as approximations of the compensatory damages that could have or should have been proven.”
 

 Bourgeois also argues that the trial court erred in finding in favor of Hughes and Styx insofar as Bourgeois claimed that Hughes and Styx were liable for misrepresentation based on the provision in the extension agreement stating that Styx “shall pay $5,000.00 as an additional escrow deposit to Plantation Title Company upon receipt of the signed extension and provide proof of payment to [Bourgeois].”
 

 “[T]o support a claim of promissory fraud, the plaintiff must show that at the time of the alleged misrepresentation (that is, the promise), the defendant intended not to do the act or acts promised, but intended to deceive the plaintiff. [Jo
 
 hnston v. Green Mountain, Inc.,
 
 623 So.2d 1116, 1121 (Ala.1993)].
 

 “The burden is on the plaintiff to prove that when the promise was made the defendant intended to deceive.
 
 *1202
 

 Martin v. American Medical Int’l, Inc.,
 
 516 So.2d 640 (Ala.1987);
 
 P & S Bus., Inc. v. South Cent. Bell Tel. Co.,
 
 466 So.2d 928 (Ala.1985). The plaintiff cannot meet his burden merely by showing that the alleged promise ultimately was not kept; otherwise, any breach of contract would constitute a fraud.
 
 Purcell Co. v. Spriggs Enterprises, Inc.,
 
 431 So.2d 515, 519 (Ala.1983).”
 

 Goodyear Tire & Rubber Co. v. Washington,
 
 719 So.2d 774, 776 (Ala.1998).
 

 In the case now before us, Bourgeois did not introduce any evidence tending to prove that, at the time of the promise, Hughes and Styx intended not to perform the promise and intended to deceive Bourgeois. Bourgeois’s proof that the promise ultimately was not kept was not sufficient by itself to establish promissory fraud.
 
 Id.
 
 Therefore, the trial court did not err in finding in favor of Hughes and Styx insofar as Bourgeois claimed that they were liable for misrepresentation based on the promise in the extension agreement that Styx would deposit an additional $5,000 with Plantation.
 

 Bourgeois also argues that the trial court erred in finding in favor of Hughes and Styx insofar as Bourgeois claimed that they were liable for misrepresentation based on the statement in the extension agreement that, “[a]s of May 16, 2008 the total deposit held by Plantation Title is $10,000.00.” However,
 

 “[t]o recover in a fraud action filed after March 14, 1997, a plaintiff must prove that he or she reasonably relied on the defendant’s alleged misrepresentation.
 
 Foremost Ins. Co. v. Parham,
 
 693 So.2d 409 (Ala.1997). The reasonable-reliance standard was the law before the release of
 
 Hickox v. Stover,
 
 551 So.2d 259 (Ala.1989), and again became the law for all actions filed after March 14, 1997. This standard was well-stated in
 
 Torres v. State Farm Fire & Casualty Co.,
 
 438 So.2d 757, 758-59 (Ala.1983):
 

 “ ‘Because it is the policy of courts not only to discourage fraud but also to discourage negligence and inattention to one’s own interests, the right of reliance comes with a concomitant duty on the part of the plaintiffs to exercise some measure of precaution to safeguard their interests. In order to recover for misrepresentation, the plaintiffs’ reliance must, therefore, have been reasonable under the circumstances. ...
 

 “ ‘ “If the purchaser blindly trusts, where he should not, and closes his eyes where ordinary diligence requires him to see, he is willingly deceived, and the maxim applies,
 
 ‘volunti non fit injuria.’
 
 ”[
 
 2
 
 ]
 

 “
 
 ‘Munroe v. Pritchett,
 
 16 Ala. 785, 789 (1849).’ ”
 

 Alfa Life Ins. Corp. v. Green,
 
 881 So.2d 987, 991-92 (Ala.2003) (footnote omitted).
 

 “The return to the reasonable-reliance standard imposes again on a plaintiff a ‘general duty ... to read the documents received in connection with a particular transaction,’
 
 Foremost [Ins. Co. v. Parham
 
 ], 693 So.2d [409] at 421 [ (Ala. 1997) ], together with a duty to inquire and investigate. ‘Fraud is deemed to have been discovered when the person either actually discovered, or when the person ought to or should have discovered, facts which would provoke inquiry by a person of ordinary prudence, and, by simple investigation of the facts, the fraud would have been discovered.’
 
 *1203
 

 Gonzales v. U-J Chevrolet Co.,
 
 451 So.2d 244, 247 (Ala.1984). As this Court stated in
 
 Ex parte Caver,
 
 742 So.2d 168, 172-73 (Ala.1999):
 

 “
 
 ‘Foremost
 
 ended the era of “ostri-chism” that had been heralded in when this Court adopted the “justifiable reliance” standard in
 
 Hickox v. Stover,
 
 551 So.2d 259 (Ala.1989), and it foreclosed the right of a person to blindly rely on an agent’s oral representations or silence to the exclusion of written disclosures in a policy.’
 

 “When reviewing a plaintiffs actions pursuant to the reasonable-reliance standard, this Court has consistently held that a plaintiff who is capable of reading documents, but who does not read them or investigate facts that should provoke inquiry, has not reasonably relied upon a defendant’s oral representations that contradict the written terms in the documents.”
 

 AmerUs Life Ins. Co. v. Smith,
 
 5 So.3d 1200, 1208 (Ala.2008).
 

 In the case now before us, the provision in the extension agreement that “[Styx] shall pay $5,000.00 as an additional escrow deposit to Plantation Title Company upon receipt of the signed extension and provide proof of payment to [Bourgeois]” would have indicated to a reasonable person that, as of the signing of the extension agreement on May 17, 2008, Styx had not yet deposited with Plantation the additional $5,000 required by the extension agreement. This provision clearly contradicted the subsequent statement in the extension agreement that, “[a]s of May 16, 2008 the total deposit held by Plantation Title is $10,000.00.” Moreover, Bourgeois knew that she had not received any proof of such a deposit before the signing of the extension agreement on May 17, 2008. Consequently, she could not have reasonably relied on the statement in the extension agreement that, “[a]s of May 16, 2008, the total deposit held by Plantation Title is $10,000.” Therefore, the trial court did not err insofar as it found in favor of Hughes and Styx with respect to Bourgeois’s misrepresentation claim based on that statement.
 

 Bourgeois has not presented any issues or argument regarding her other claims. Consequently, we do not consider those claims.
 
 See Tucker v. Cullman-Jefferson Counties Gas Dist.,
 
 864 So.2d 317, 319 (Ala.2003) (“ ‘An appeals court will consider only those issues properly delineated as such, and no matter will be considered on appeal unless presented and argued in brief.
 
 Ex parte Riley,
 
 464 So.2d 92 (Ala. 1985)’ ” (quoting
 
 Braxton v. Stewart,
 
 539 So.2d 284, 286 (Ala.Civ.App.1988)) (emphasis omitted)).
 

 In summary, we reverse the trial court’s judgment insofar as it found in favor of Styx with respect to Bourgeois’s claim that Styx had breached the extension agreement by failing to deposit an additional $5,000 with Plantation as required by the extension agreement; we affirm the trial court’s judgment in all other respects; and we remand the action for further proceedings consistent with this opinion.
 

 AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
 

 THOMPSON, P.J., and PITTMAN, THOMAS, and MOORE, JJ., concur.
 

 [1]
 

 . Plantation tendered the $5,000 in its possession to the trial-court clerk; however, the clerk returned it to Plantation. The record does not indicate why the clerk returned it.
 

 [2]
 

 .
 
 See Black's Law Dictionary
 
 1605 (8th ed.2004), defining the maxim
 
 "volenti non fit injuria "
 
 as "[t]he principle that a person who knowingly and voluntarily risks danger cannot recover for any resulting injury.”