DONALDSON, Judge.
This court's opinion of December 1, 2017, is withdrawn, and the following is substituted therefor.
*70 K.L.R. ("the birth mother") appeals the summary judgment entered by the Mobile Probate Court ("the probate court") on August 24, 2016, denying her contest challenging the adoption of a child ("the child") by K.G.S. ("the adoptive mother") and finding that the birth mother's belated attempt to withdraw her consent to the adoption was ineffective. We affirm the summary judgment. The birth mother also challenges the probate court's order entered on August 9, 2016, prohibiting her from making certain communications and requiring her to perform certain actions. We determine that the probate court lacked subject-matter jurisdiction to enter the August 9, 2016, order. Accordingly, we dismiss the appeal insofar as it relates to that order.
Facts and Procedural History
In October 2014, the birth mother discovered that she was pregnant. On December 5, 2014, the birth mother contacted Donna Ames and requested help with placing the unborn child for adoption. Ames was an attorney and also the president of Adoption Rocks, Inc., a nonprofit entity that aids in facilitating adoptions of unborn children. Ames arranged a meeting between the birth mother and the adoptive mother, after which the birth mother chose the adoptive mother to be the adoptive parent for the child. Ames was the adoptive mother's counsel during that time. The expected date of birth for the child was June 17, 2015.
I. The Birth Mother's Prebirth Consent to Adoption
On December 30, 2014, the adoptive mother filed in the probate court a motion for a hearing on the birth mother's prebirth consent to the adoption and a petition for preapproval of payments from the adoptive mother to the birth mother for maternity-related expenses. See § 26-10A-34(a), Ala. Code 1975 (allowing payments for "maternity-connected medical or hospital and necessary living expenses of the mother preceding and during pregnancy-related incapacity as an act of charity, as long as the payment is not contingent upon placement of the minor for adoption, consent to the adoption, or cooperation in the completion of the adoption"). On February 6, 2015, the birth mother, the adoptive mother, and Ames appeared before Probate Judge Don Davis in a hearing on both of those matters. In a closed portion of the hearing with only the birth mother present, the probate judge explained to the birth mother the contents of the prebirth-consent form and the consequences of consenting to the adoption of the child, including that her consent could become irrevocable. Among other things, the probate judge explained that, after the birth of the child, the birth mother could withdraw her consent within 5 days for any reason and within 14 days if the court determined that the withdrawal was reasonable under the circumstances and consistent with the best interests of the child. See § 26-10A-13(a) and (b), Ala. Code 1975. The probate judge also explained that, after the 5-day and 14-day periods and before the entry of a final decree of adoption, the birth mother could withdraw her consent if she established that the consent had been procured by fraud, duress, mistake, or undue influence. See § 26-10A-14(a)(2), Ala. Code 1975. After this explanation, the birth mother testified that she wanted to give her prebirth consent to the adoption and that she understood each part of the prebirth-consent form as well as the applicable periods, conditions, and procedures for executing a withdrawal of her consent. She also testified that both Ames and one of her parents, who was an attorney, had reviewed the prebirth-consent form with her. After the birth mother executed the prebirth-consent form, the following discussion *71 took place between the birth mother and the probate judge:
"Q. [By the probate judge:] Okay, ... I'm handing to you now the original and two copies of the document that you and I just signed and it's your responsibility to deliver those to [the adoptive mother] or to [the adoptive mother's] lawyer if you so choose, okay?
"A. So I need to give all these to Donna [Ames]?
"Q. Well, that's up to you. I can't give you advice about that. That's your call, okay?
"A. Okay."
After the closed portion of the hearing, the birth mother, followed by the adoptive mother, testified regarding payments that had been made from the adoptive mother to the birth mother that the adoptive mother characterized as charitable payments for expenses. Later on February 6, 2015, the probate court entered an order approving the adoptive mother's payments for the birth mother's expenses.
On April 1, 2015, the biological father of the child executed a form giving his prebirth consent to the adoption of the child. The biological father has not been a party to any further proceedings in this case.
On May 23, 2015, Ames filed a motion to withdraw from further representation of the adoptive mother. The adoptive mother obtained representation by another attorney.
The child was born in a hospital on May 28, 2015, before the expected date of birth. The birth mother did not relinquish custody of the child to the adoptive mother; instead, she left the hospital with the child. The birth mother did not execute a withdrawal of her prebirth consent to the adoption within either the 5-day period or the 14-day period after the child's birth, as prescribed by § 26-10A-13(a) and (b).
II. The Contest to the Adoption
On June 15, 2015, the adoptive mother filed in the probate court a petition to adopt the child. See § 26-10A-16, Ala. Code 1975. On the same day, the adoptive mother filed an emergency motion seeking an order from the probate court directing that the child be immediately placed in her custody. On June 16, 2015, the adoptive mother filed a petition in the Mobile Juvenile Court ("the juvenile court") alleging that the child was dependent and requesting immediate custody of the child. The juvenile court entered a pickup order and ordered the immediate transfer of the child's custody to the adoptive mother. On June 17, 2015, law-enforcement personnel picked up the child pursuant to the juvenile court's order. On June 19, 2015, the probate court entered an interlocutory order granting custody of the child to the adoptive mother. On July 8, 2015, the juvenile court entered a judgment dismissing the case before it based on a lack of subject-matter jurisdiction over the custody of the child, noting that it had received a copy of the probate court's June 19, 2015, order. The birth mother appealed the juvenile court's judgment, specifically challenging the orders that it had entered before the dismissal of the action. On January 8, 2016, this court dismissed the appeal as moot because, we held, the juvenile court's judgment dismissing the action for lack of subject-matter jurisdiction had dissolved its prior orders. K.L.R. v. K.G.S., 201 So.3d 1200, 1203 (Ala. Civ. App. 2016).
On June 19, 2015, the same day the probate court entered its interlocutory order granting the adoptive mother custody of the child, the birth mother filed in the probate court a notice of withdrawal of her consent to the adoption of the child and a motion contesting the adoption. In her motion, the birth mother alleged that the adoptive mother had obtained the birth *72 mother's prebirth consent to the adoption by fraud, duress, mistake, or undue influence. See § 26-10A-14(a)(2). The birth mother specifically alleged that she had acted under the belief that Ames had represented her in connection with the prebirth-consent proceedings and that Ames had stated to her that the adoption would not proceed until "final paperwork" was completed at the hospital after the child was born.
On July 14, 2015, the birth mother filed a motion to reconsider the June 19, 2015, order granting the adoptive mother custody of the child. The birth mother argued, among other things, that because she had filed a notice of withdrawal of her consent to the adoption, her due-process rights had been violated by the entry of the order granting the adoptive mother pendente lite custody of the child without an evidentiary hearing having been held on the issues of her consent to the adoption and her fitness as a parent. The birth mother asserted that she had filed her notice of withdrawal of her consent to the adoption before the interlocutory order was entered later in the day on June 19, 2015. The birth mother also argued that her due-process rights had been violated when, she asserts, the probate judge failed to disclose to the birth mother that she was not being represented by counsel during the prebirth-consent hearing and that Ames was representing the adoptive mother. The adoptive mother filed a response arguing that the birth mother's due-process rights were not implicated because, she asserted, the birth mother had not filed a contest to the adoption before the probate court entered its interlocutory order.
On July 15, 2015, the birth mother filed a motion stating that, although she was not alleging any impropriety, "Judge Davis should recuse [himself] from this matter to avoid the appearance of impropriety and bias" as a result of his serving as an advisory board member for Adoption Rocks, Inc. On July 21, 2015, Judge Davis entered an order recusing himself from the proceedings.
After Judge Davis's recusal, the clerk of the probate court assigned J. Michael Druhan, an attorney, to preside over the proceedings. On July 22, 2015, the birth mother filed a motion requesting that Druhan recuse himself from the proceedings because he had not been properly appointed as a temporary judge. On the same day, the probate court entered an order denying the motion.[1] Also in the July 22, 2015, order, the probate court, among other rulings, denied the birth mother's July 14, 2015, motion to reconsider the June 19, 2015, interlocutory order granting the adoptive mother custody of the child.
On August 20, 2015, the birth mother filed a petition for a writ of mandamus with this court seeking to vacate the orders entered by Druhan. On August 24, 2015, this court denied the petition in part and dismissed the petition in part on the basis that it had been untimely filed. Ex parte K.R. (No. 2140951), 217 So.3d 881 (Ala. Civ. App. 2015) (table).[2] On August 27, 2015, the birth mother filed a petition for a writ of mandamus with our supreme court. In Ex parte K.R., 210 So.3d 1106, 1113 (Ala. 2016), the supreme court granted the petition in part and issued the writ, holding that "Druhan was never properly appointed as a temporary probate judge.
*73 Accordingly, Druhan had no authority to enter the orders he entered, and any order entered by Druhan is void."
On June 15, 2016, the presiding judge of the Mobile Circuit Court appointed James C. Wood as the special probate judge in this case.
On June 23, 2016, the adoptive mother filed a motion for a summary judgment regarding the birth mother's contest of the adoption.[3] In her motion, the adoptive mother asserted that the birth mother had not filed a withdrawal of consent to the adoption within the required 5-day or 14-day periods provided in § 26-10A-13(a) and (b). Regarding the substance of the birth mother's adoption contest, the adoptive mother argued that the birth mother's withdrawal of consent was not effective because, the adoptive mother asserted, the prebirth consent was not obtained by fraud, duress, mistake, or undue influence as required by § 26-10A-14(a). The adoptive mother also argued that no fraudulent misrepresentation had induced the birth mother to consent to the adoption or had led to the untimely filing of her notice of withdrawal of that consent.
On August 18, 2016, the birth mother filed a response to the motion for a summary judgment. As one of her arguments, the birth mother claimed that the sections of the Alabama Adoption Code authorizing a prebirth consent from a biological mother are unconstitutional both facially and as applied to her. The birth mother also argued that the doctrine of equitable tolling applied to her otherwise untimely filing of her withdrawal of consent to the adoption under § 26-10A-13(a) and (b) and that her withdrawal of consent was effective under § 26-10A-14(a)(2) because of fraud or undue influence on the part of Ames in procuring her consent.
On August 18, 2016, the birth mother served a notice of her constitutional challenge to the Alabama Adoption Code on the Alabama Attorney General. See § 6-6-227, Ala. Code 1975.
On August 24, 2016, the probate court entered a summary judgment in favor of the adoptive mother.[4] In the summary judgment, the probate court found, "as a matter of fact and as a matter of law, based on the undisputed material evidence to this dispositive motion, that on February 6, 2015, [the birth mother] freely, voluntarily and with full knowledge of its terms, and under oath, executed her pre-birth consent to this adoption, which was not obtained by fraud, duress, mistake or undue influence on the part of [the adoptive mother] or her agent, including attorney Donna Ames." The probate court addressed the birth mother's contention that she had not complied with the 5-day or 14-day statutory periods for executing a withdrawal of her consent to the adoption because of a conversation involving the birth mother, the adoptive mother, and Ames in April 2015, finding:
"[The birth mother] and Ames both testified about a conversation between [the adoptive mother] and Ames in April 2015, that took place when they met [the birth mother] after a doctor's checkup. [The adoptive mother] asked Ames a logistical question about what would take place at the hospital when the baby was born and what would happen next. The conversation between [the adoptive mother] and Ames in [the birth mother's]
*74 presence did not concern the withdrawal of consent procedure nor did the discussion concern any issue of what would happen if [the birth mother] should change her mind. That was not the subject of that conversation. The statements by Ames were true.
"Regarding the logistics at the hospital, Ames told [the adoptive mother] that Ames would visit the hospital and [the birth mother] would sign documents that allowed [the adoptive mother] to take the baby home. Alabama Code § 26-10A-15 references that 'no healthcare facility shall surrender the physical custody of an adoptee' to an adoptive parent without the authorization of a birth parent executed after the birth. Regarding what would happen next, Ames told [the adoptive mother] that the Judge would schedule a final hearing. The Final Decree and dispositive hearing under § 26-10A-25 is typically not done until 60 days or more after the adoptee has been in the physical custody of the adoptive parent. This is true whether the baby goes home from the hospital with the adoptive parent or initially with the birth mother for subsequent delivery to the adoptive parent. These sections and the proceedings which occur after a birth do not concern the requirements under § 26-10A-13 for execution and delivery of the withdrawal of consent document that [the birth mother] received and understood."
The probate court found that the doctrine of equitable tolling did not apply in this case to the 5-day or 14-day statutory periods. The probate court further found that the best interests of the child would be served by granting the adoption and that the birth mother had not presented any evidence to contradict that finding. On August 24, 2016, the probate court entered a "Final Decree of Adoption."[5]
III. The Protective Order
On July 8, 2015, the adoptive mother filed a motion seeking an order requiring the birth mother to show cause why she should not be held in contempt.[6] As grounds, the adoptive mother asserted that the birth mother had posted false and slanderous statements about the adoption proceedings on the Internet. The adoptive mother sought an order requiring the birth mother to pay for the adoptive mother's legal fees relating to the contempt issues, to remove the postings on the Internet, and to cease from making any statements about the adoption proceedings in any public medium. Also on July 8, 2015, the adoptive mother filed a motion seeking the probate court's permission to speak to the media, alleging that the adoptive mother's counsel had been contacted by a media outlet about the birth mother's postings on the Internet. On July 10, 2015, the adoptive mother filed a motion seeking an order requiring the birth mother and other people associated with her to remove postings on social media that, the adoptive mother asserted, violated statutory provisions regarding the confidentiality of adoption proceedings, and she also filed a motion seeking permission to publicly post *75 the transcript of the prebirth-consent hearing conducted on February 6, 2015. On July 10, 2015, the probate court entered an order denying the adoptive mother's motion seeking to publicly post the transcript of the prebirth-consent hearing and setting a hearing on July 22, 2015, regarding the adoptive mother's motions to show cause and seeking the removal of postings on the Internet and social media. On July 21, 2015, the adoptive mother filed a brief in support of her pending motions, arguing that the birth mother's public disclosures of the adoption matters violated § 26-10A-31, Ala. Code 1975.
While Druhan was the appointed probate judge in the case, the probate court conducted the scheduled hearing on July 22, 2015.[7] At the hearing, the adoptive mother submitted exhibits showing a Web page from Facebook, a social-media Web site with postings by the birth mother and others regarding the adoption proceedings, an account on a fund-raising Web site, and news articles. The exhibits contained the names of the people involved in the case, including the child, details of the adoption proceedings, and descriptions and discussions of events at issue in the adoption contest. On July 22, 2015, the probate court entered an order denying the adoptive mother's motion to show cause but granting in part the adoptive mother's motion to remove social-media postings. In the July 22, 2015, order, the probate court "enjoined [the parties and counsel for the parties] from discussing or referencing this adoption case with the public, social media, news media, or the like, pending further proceedings."
On July 23, 2015, the adoptive mother filed a motion for contempt, asserting that, during the hearing on July 22, 2015, the birth mother had stated under oath that she would follow the probate court's order prohibiting the parties from making references to this case on social media and would request that her friends not post such materials on social media. The adoptive mother then asserted that, on July 23, 2015, the birth mother's close friend and roommate had posted an article on Facebook that characterized the adoption proceedings as a kidnapping and a forced adoption, mentioned the names of the parties and the child, and discussed events at issue in the adoption contest. After a hearing on the motion, the probate court entered an order on July 27, 2015, denying the adoptive mother's July 23, 2015, motion for contempt.
On July 31, 2015, the birth mother filed a motion seeking to alter, amend, or vacate the July 22, 2015, order enjoining the parties from publicly referencing the adoption proceedings. In the motion, the birth mother argued that the order was an impermissible prior restraint on speech in violation of the First Amendment to the United States Constitution. The adoptive mother filed a response arguing that the July 22, 2015, order followed the confidentiality requirements mandated by § 26-10A-31. After a hearing, the probate court entered an order on August 10, 2015, denying the birth mother's motion to alter, amend, or vacate the July 22, 2015, order.
On August 10, 2015, the adoptive mother filed a motion seeking an order finding the birth mother in contempt and restraining the birth mother and those acting on her behalf or direction from violating the July 22, 2015, order. The adoptive mother asserted that the birth mother had continued to violate the July 22, 2015, order through postings on Facebook and other social media. The adoptive mother submitted an *76 exhibit showing a Facebook account named "Auburn Tigers" with postings regarding the adoption proceedings. In one post, the person behind the account claims to have sent messages to 31 of the adoptive mother's friends and to have placed a prayer request at the adoptive mother's church for her to return the child to the birth mother.
On August 13, 2015, the adoptive mother filed a motion seeking a temporary restraining order, pursuant to Rule 65(b), Ala. R. Civ. P., against the mother of the birth mother and the mother of the birth mother's roommate. The adoptive mother asserted that social-media postings by them had violated the July 22, 2015, order and § 26-10A-31. On August 25, 2015, the birth mother filed a response arguing that the adoptive mother's motion should be denied because the probate court lacked subject-matter jurisdiction to enter a temporary restraining order against nonparties. After a hearing, the probate court entered an order on October 2, 2015, denying the adoptive mother's motion for a temporary restraining order but granting her motion for contempt, fining the birth mother in the amount of $500.
On October 5, 2015, the birth mother filed a motion for contempt against the adoptive mother, arguing that the adoptive mother had violated the July 22, 2015, order by having had communications with family and friends about the adoption proceedings and through her counsel's having obtained information from the child's biological father. The adoptive mother filed a response arguing that the nature of her communications with family and friends were not public disclosures that violated the confidentiality of the proceedings and that her counsel had permissibly communicated with the child's biological father, who, she asserted, was a potential witness in the case. After a hearing, the probate court entered an order on October 15, 2015, denying the birth mother's motion for contempt.
On July 13, 2016, the adoptive mother filed a "Motion for Further Protective Order and Injunctive Relief." In the motion, the adoptive mother asserted that, since July 2015, the probate court had made clear that the birth mother and her counsel were not authorized to speak to the media but that a news article regarding the adoption proceedings had been published on June 15, 2016, that included statements by the birth mother and her counsel. The adoptive mother also asserted that the birth mother had continued to discuss the adoption proceedings in July 2016 postings on Facebook promoting fund-raising efforts for the litigation and that, on the night of the child's first birthday, the adoptive mother's front yard had become littered with signs at the direction of the birth mother. The adoptive mother requested another order directing the birth mother to stop making statements to the media, to stop posting information regarding the adoption proceedings on the Internet, and to stop having any contact with the adoptive mother or her residence.
After Judge Wood was appointed as the probate judge in this case, the probate court conducted a hearing on the adoptive mother's "Motion for Further Protective Order and Injunctive Relief." On August 9, 2016, the probate court entered an "Order of Further Protection" ("the protective order"), ordering that the birth mother:
"1. Cease and desist from any contact or communications with [the adoptive mother] or her home whether direct or indirect.
"2. Cease and desist all media and social media communications or postings related to this child, his adoption, [the adoptive mother] or these proceedings, including photographs taken when the *77 baby was in her custody, or reference to her pregnancy with this child, including but not limited to the following sites:
"[List of Facebook pages, social-media services, and other Web sites.]
"3. [The birth mother] is ordered to remove, within forty-eight (48) hours of this Order, all of her social media postings concerning this child, this adoption and the parties thereto including photographs of the child.
"4. [The birth mother] is further ordered to within in 48 hours, direct her 'team,' including the 'administrator' of [a Facebook page], to remove and shutdown [the Facebook page], [a] Twitter [social-media] account, and other similar outlets as referenced in Paragraph 2; to remove their postings from social media concerning this adoption and the parties thereto, including any photographs of [the adoptive mother] or the child; and to cease communications with any media of any type now and in the future regarding this adoption and the parties thereto. [The birth mother] is ordered to place her demand for these actions in writing to said persons and to produce a copy of said writings and their communications to said persons to [the adoptive mother's] counsel. [The birth mother] is further ordered to refrain from any direct communications or private messaging with such persons or through third parties, that in any way contravenes her written instruction to them, including private Facebook messaging.
"The following language is approved for the communications by [the birth mother] referenced in Paragraph 4 above:
" 'I want to thank each and every one of you for your kind words, thoughts and prayers. It has meant a lot to me and has helped me through this time. Alabama law states that adoption proceedings are confidential. Please stop any further postings on this or any other social media site that in anyway concerns this child, the adoption matter, or the adoptive parent. Also I am asking you to remove all of your prior postings to this and other sites. I further direct that you agree to my request that [the Facebook page], [the Twitter account], and all internet or blog sites referencing this adoption and its contest, be shut down so they are no longer on the internet.' "
On August 23, 2016, the birth mother filed a motion seeking to modify the protective order. In the motion, the birth mother asserted that "[n]ow that the case is no longer pending, there are aspects of the Protective Order that are due to be lifted." Specifically, the birth mother asserted that she had the right to disclose publicly her pregnancy and the adoption of the child and the right to seek assistance with her legal expenses. The adoptive mother filed a reply asserting that the August 9, 2016, order prohibits the birth mother from making social-media and Internet postings concerning the adoption but that she did not object to the birth mother's seeking private assistance from family or close friends already aware of the matter.
On September 1, 2016, the adoptive mother filed a motion for protective relief. In the motion, the adoptive mother requested permission to send a copy of the August 9, 2016, order to the administrators of Facebook and other Internet sites, asserting that the birth mother had continued to not comply with the order and that those sites had not removed postings regarding the adoption proceedings.
On September 6, 2016, the probate court entered an order denying the pending motions regarding the protective order filed *78 by the birth mother and the adoptive mother.
IV. The Appeal
On September 7, 2016, the birth mother filed a notice of appeal to this court. After the record on appeal was initially completed, we noted that the docket sheet in the record indicated that the summary judgment and final decree of adoption had been entered on August 23, 2016, more than 14 days before the notice of appeal was filed. See § 26-10A-14(e) ("Any order made by the court upon a petition to withdraw consent or relinquishment under this section shall be deemed a final order for the purpose of filing an appeal under Section 26-10A-26."). The record was subsequently supplemented upon the birth mother's motions filed on October 12, 2016, and January 3, 2017, with transcripts of various hearings and exhibits the birth mother had submitted in her response to the adoptive mother's motion for a summary judgment. See Rule 10(f), Ala. R. App. P. In her motion filed on January 3, 2017, the birth mother requested that, in addition to the inclusion of certain exhibits, the probate court amend the docket sheet in the record to indicate that the summary judgment was entered on August 24, 2016, instead of August 23, 2016. There was no request to amend the date of entry of the final decree of adoption. The birth mother attached an e-mail correspondence with an employee of the probate court in which the birth mother's counsel asked if the summary judgment had been docketed on August 24, 2016, and the probate court employee responded with "Correct." On January 4, 2017, the probate court entered an order granting the birth mother's motion in part. The supplement to the record contained only the exhibits requested. The date of the entry of the summary judgment was not amended.
On January 17, 2017, the birth mother filed in this court an "Agreed Statement as to the Record on Appeal," purportedly pursuant to Rule 10(e), Ala. R. App. P. In the statement, the parties stipulated that the summary judgment had been entered on August 24, 2016. There is no indication that the birth mother filed a motion in the probate court in conjunction with that filing or that the probate court approved of that statement pursuant to Rule 10(e). As a result, the record remained unchanged as to the August 23, 2016, entry date of the summary judgment. No request was made to amend the date of entry of the final decree of adoption.
On April 27, 2017, this court requested letter briefs from the parties addressing whether the appeal was taken from a final judgment and whether any motions for contempt or other claims remained pending in light of the holding in Ex parte K.R., 210 So.3d 1106 (Ala. 2016), that Druhan's orders were void. On May 11, 2017, after receiving letter briefs from the birth mother and the adoptive mother, we requested further elaboration from the parties. In the letter briefs submitted, the birth mother and the adoptive mother agreed that there were no pending motions; that Druhan's orders were void; that the motions filed before Judge Wood's appointment were moot because the parties had raised anew before Judge Wood the issues raised in the prior motions; that all the issues before Judge Wood had been adjudicated; and that the summary judgment was final pursuant to Rule 54, Ala. R. Civ. P. The adoptive mother also stated that the summary judgment was entered on August 24, 2016, and argued that the probate court had conducted separate contempt proceedings resulting in the protective order entered on August 9, 2016.
On July 20, 2017, this court reinvested the probate court with jurisdiction for it to *79 determine the accurate dates of the motions and orders listed as filed and entered on August 23, 2016, on the docket sheet, pursuant to Rule 10(f), Ala. R. App. P. On July 27, 2017, the probate court supplemented the record with a docket sheet indicating that the summary judgment had been entered on August 24, 2016, making the appeal from the order denying the birth mother's request to withdraw her consent timely. The "Final Decree of Adoption" remained listed as having been entered on August 23, 2016, one day before the entry of the summary judgment. This court requested letter briefs from the parties addressing the effect of the final decree of adoption having been entered before the entry of the summary judgment, whether the appeal was timely as to the protective order, and whether the probate court had had subject-matter jurisdiction to enter the protective order. In response to our requests for briefs, we were not directed to any statutory authority that provides the probate court in Mobile County with equity jurisdiction in adoption proceedings. In her letter brief, the birth mother stated that she had filed a motion in the probate court to supplement the record to indicate that the final decree of adoption was entered on August 24, 2016. She also asserted that the probate court lacked general and equity jurisdiction to grant injunctive relief in adoption cases. In her letter brief, the adoptive mother argued that the probate court had entered the protective order under its contempt powers.
On September 14, 2017, the probate court granted the birth mother's motion to amend the record, and this court received a supplement to the record with a docket sheet indicating that the final decree of adoption had been entered on August 24, 2016. The information contained on that amended docket sheet is reflected in our account of the procedural history of this case.
Standard of Review
In considering the birth mother's arguments regarding the probate court's summary judgment, we apply the following standard of review:
"This Court's review of a summary judgment is de novo. Williams v. State Farm Mut. Auto. Ins. Co., 886 So.2d 72, 74 (Ala. 2003). We apply the same standard of review as the trial court applied. Specifically, we must determine whether the movant has made a prima facie showing that no genuine issue of material fact exists and that the movant is entitled to a judgment as a matter of law. Rule 56(c), Ala. R. Civ. P.; Blue Cross & Blue Shield of Alabama v. Hodurski, 899 So.2d 949, 952-53 (Ala. 2004). In making such a determination, we must review the evidence in the light most favorable to the nonmovant. Wilson v. Brown, 496 So.2d 756, 758 (Ala. 1986). Once the movant makes a prima facie showing that there is no genuine issue of material fact, the burden then shifts to the nonmovant to produce 'substantial evidence' as to the existence of a genuine issue of material fact. Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794, 797-98 (Ala. 1989) ; Ala. Code 1975, § 12-21-12. '[S]ubstantial evidence is evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.' West v. Founders Life Assur. Co. of Fla., 547 So.2d 870, 871 (Ala. 1989)."
Dow v. Alabama Democratic Party, 897 So.2d 1035, 1038-39 (Ala. 2004).
Discussion
I.
The birth mother asserts that the probate court improperly evaluated the credibility *80 of a witness in entering the summary judgment.
"At the summary-judgment stage, it is not the trial court's function ' "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." ' Camp v. Yeager, 601 So.2d 924, 927 (Ala. 1992) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) ). Furthermore, ' " 'a court may not determine the credibility of witnesses on a motion for summary judgment.' " ' Wilson v. Teng, 786 So.2d 485, 498 (Ala. 2000) (quoting Ex parte Usrey, 777 So.2d 66, 68 (Ala. 2000), quoting in turn Phillips v. Wayne's Pest Control Co., 623 So.2d 1099, 1102 (Ala. 1993) )."
Nix v. Franklin Cty. Dep't of Human Res., 234 So.3d 450, 456 (Ala. 2017).
In the summary judgment, the probate court made the statement that "the Court observed the demeanor of [the birth mother] during her testimony." That statement is within the probate court's account of the procedural history of the case and, from our review of the judgment, describes a hearing held on the adoptive mother's "Motion for Further Protective Order and Injunctive Relief," not her motion for a summary judgment:
"In the interim, on August 2, 2016, the Court heard [the adoptive mother's] Motion for Relief concerning the confidentiality of adoption proceedings and various media and social media statements by [the birth mother] concerning this matter. Consistent with prior Orders of the Probate Court on this issue, this Court ordered [the birth mother] to comply with confidentiality requirements. [The birth mother] testified at said hearing, and the Court observed the demeanor of [the birth mother] during her testimony."
It appears that the statement references the probate court's evaluation of evidence pertinent to the probate court's ruling on the adoptive mother's "Motion for Further Protective Order and Injunctive Relief." We hold that the probate court's statement about the birth mother's demeanor was not an evaluation of the credibility of evidence regarding the summary-judgment motion, and, therefore, the statement does not compel a conclusion that the probate court applied an incorrect standard when ruling on the motion.
The birth mother further asserts that the probate court applied an improper summary-judgment standard by referencing the birth mother's burden that she would have had at trial to prove by a preponderance of evidence that her consent to the adoption had been obtained by fraud, duress, mistake, or undue influence. In the summary judgment, the probate court prefaced its findings of facts and conclusions of law by stating that it found that "there is no question of material fact as to the dispositive issues presented." As part of its findings of facts and conclusions of law, the probate court stated:
"[The birth mother] bears the burden of proving by a preponderance of the evidence, that her consent on February 6, 2015, was obtained as a result of fraud, duress, mistake or undue influence on the part of [the adoptive mother] or her agent, which [the birth mother] contends is Ames. [The birth mother] has factually failed to meet that burden. [The birth mother] has presented no evidence that she would not have given her consent to Judge Davis on February 6, 2015, but for her claims against Ames as previously discussed, including her contention that she believed Ames was representing *81 her. Instead, the Court finds, based on substantial evidence, that Ames' alleged wrongful conduct did not cause [the birth mother] to give her voluntary consent.
"The Court specifically finds as a matter of fact and as a matter of law, based on the undisputed material evidence to this dispositive motion, that on February 6, 2015, [the birth mother] freely, voluntarily and with full knowledge of its terms, and under oath, executed her pre-birth consent to this adoption, which was not obtained by fraud, duress, mistake or undue influence on the part of [the adoptive mother] or her agent, including attorney Donna Ames, as would be required by Code of Alabama § 26-10A-14 in order to set aside the consent."
The birth mother asserts that "the burden of proving by a preponderance of the evidence" referenced in the summary judgment refers to the burden of proof she would have had at a trial, not to the burden of proof applicable to the summary-judgment motion. The issue to be decided at trial was whether the birth mother's consent to the adoption should be withdrawn pursuant to § 26-10A-14(a)(2), which requires "a showing that the consent or relinquishment was obtained by fraud, duress, mistake, or undue influence on the part of a petitioner or his or her agent or the agency to whom or for whose benefit it was given." The burden of making that "showing" is on the person seeking to withdraw the consent-in this case, the birth mother. The probate court found that the birth mother had not presented evidence establishing a genuine issue of material fact that would permit a finding at trial that such a showing had been made. If the nonmovant has the burden of proof at trial, a motion for a summary judgment may provide as its basis affirmative evidence negating an essential element of the nonmovant's claim or demonstrate the insufficiency of evidence to establish that element. Ex parte General Motors Corp., 769 So.2d 903, 909 (Ala. 1999). Accordingly, if supported by the record, the birth mother's inability to provide evidence to support an essential element of her claim, for which she would have the burden of proof at trial, presents a basis for granting the adoptive mother's summary-judgment motion. Therefore, we cannot conclude that the birth mother has established that the summary judgment expresses the application of an improper standard for a summary judgment.
II.
The birth mother argues that the evidence presented a genuine issue of a material fact as to whether her consent to the adoption on February 6, 2015, was obtained by fraud or undue influence pursuant to § 26-10A-14(a)(2).
Regarding the birth mother's assertion of fraud against Ames, the probate court found that there was no evidence indicating that Ames had made any material misrepresentations that caused the birth mother to consent to the adoption. In her argument on appeal, the birth mother does not identify any specific misrepresentations, any fraudulently concealed information, or any undue activity that procured the birth mother's consent to the adoption. We are not directed to a legally authoritative basis for reversing the summary judgment on the assertion of a consent to the adoption obtained by fraud or undue influence. See White Sands Grp., L.L.C. v. PRS II, LLC, 998 So.2d 1042, 1058 (Ala. 2008). Therefore, we decline to further consider this issue.
III.
The birth mother further argues that the doctrine of equitable tolling applied *82 to her filing of a withdrawal of consent to the adoption beyond the deadlines set by § 26-10A-13(a) and (b), which would require a lesser showing than necessary under § 26-10A-14(a)(2) to withdraw consent. Section 26-10A-13 provides, in pertinent part:
"(a) A consent or relinquishment may be taken at any time, except that once signed or confirmed, may be withdrawn within five days after birth or within five days after signing of the consent or relinquishment, whichever comes last.
"(b) Consent or relinquishment can be withdrawn if the court finds that the withdrawal is reasonable under the circumstances and consistent with the best interest of the child within 14 days after the birth of the child or within 14 days after signing of the consent or relinquishment, whichever comes last."
The record indicates that the birth mother did not file a withdrawal of consent within either the 5-day period or 14-day period after the child's birth, as provided by § 26-10A-13(a) and (b).
A party seeking equitable tolling must establish an "extraordinary circumstance" that prevents a party from meeting a statutory deadline. Weaver v. Firestone, 155 So.3d 952, 957 (Ala. 2013) (" '[A] litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' as to the filing of his action. Pace v. DiGuglielmo, 544 U.S. 408, 418, 125 S.Ct. 1807, 161 L.Ed.2d 669 (2005)."). The birth mother asserts that fraud on the part of Ames constitutes such an extraordinary circumstance. However, we are not directed to a legally authoritative basis regarding her assertion that Ames's conduct was fraudulent. See White Sands Grp., L.L.C. v. PRS II, LLC, 998 So.2d at 1058. As a result, the birth mother's argument contains no ground for applying equitable tolling to the deadlines set by § 26-10A-13(a) and (b).
Moreover, § 26-10A-14 contains a tolling provision that already accounts for the circumstances asserted by the birth mother. The birth mother argues that the circumstances that she asserts support the application of equitable tolling also constitute fraud and undue influence pursuant to § 26-10A-14(a), which states, in relevant part:
"(a) The consent or relinquishment, once signed or confirmed, may not be withdrawn except:
"(1) As provided in Section 26-10A-13 ; or
"(2) At any time until the final decree upon a showing that the consent or relinquishment was obtained by fraud, duress, mistake, or undue influence on the part of a petitioner or his or her agent or the agency to whom or for whose benefit it was given. After one year from the date of final decree of adoption is entered, a consent or relinquishment may not be challenged on any ground, except in cases where the adoptee has been kidnapped.
"(3) Upon dismissal of the adoption after a contested hearing as provided in Section 26-10A-24."
Our supreme court has stated "that in determining whether equitable tolling is applicable, consideration must be given as ' "to whether principles of 'equity would make the rigid application of a limitation period unfair' ...." ' " Weaver v. Firestone, 155 So.3d at 958 (quoting Ex parte Ward, 46 So.3d 888, 897 (Ala. 2007), quoting in turn Fahy v. Horn, 240 F.3d 239, 245 (3d Cir. 2001), quoting in turn *83 Miller v. New Jersey Dep't of Corr., 145 F.3d 616, 618 (3d Cir. 1998) ). Because § 26-10A-14(a)(2) already tolls the deadlines in § 26-10A-13(a) and (b) based on the circumstances asserted by the birth mother, she cannot establish that the probate court's denial of her withdrawal of consent to the adoption was an overly rigid application of statutory time limitations. We therefore affirm the summary judgment regarding the applicability of the doctrine of equitable tolling in this case without deciding whether, generally, a probate court may apply the doctrine to statutorily prescribed periods.[8]
IV.
The birth mother contends that the Alabama Adoption Code violates her constitutional guarantee of procedural due process. The birth mother argues that more procedural safeguards are needed to protect a pregnant woman who intends to give her prebirth consent to an adoption when she is not represented by counsel. We note that "[m]atters of policy are properly the domain of the legislature." Griffin v. Unocal Corp., 990 So.2d 291, 294 (Ala. 2008). We also note that, "in passing upon the constitutionality of a legislative act, the courts uniformly approach the question with every presumption and intendment in favor of its validity, and seek to sustain rather than strike down the enactment of a coordinate branch of the government." Alabama State Fed'n of Labor v. McAdory, 246 Ala. 1, 9, 18 So.2d 810, 815 (1944).
"The guarantee of procedural due process protects against a state's impairment of a liberty interest without fair proceedings." C.E.G. v. A.L.A., 194 So.3d 950, 958 (Ala. Civ. App. 2015). Accordingly, the birth mother must show 1) that she has a constitutionally protected interest, 2) that the state has impaired that interest, and 3) that the procedure impairing that interest is constitutionally inadequate. The birth mother identifies a parent's liberty interest in the care and custody of a child, but she does not explain how a parent's voluntary consent to an adoption could be a governmental impairment of that interest. As discussed, § 26-10A-14(a)(2) already provides for the withdrawal of consent to an adoption upon a showing that the consent was obtained by fraud, duress, mistake, or undue influence.
The birth mother also argues that a "process" is needed to retrieve a child born to a woman who has contravened her prebirth consent to an adoption by not relinquishing custody of the child. She does not explain how a process such as the one used by the adoptive mother to obtain custody of the child infringes upon the birth mother's due-process rights or how a biological mother has a right to custody of the child after having executed a form providing a valid prebirth consent to an adoption. Moreover, we cannot find a specific constitutional violation based on the general legal authority cited in the birth mother's arguments. Prevailing on a due-process claim requires proving a specific violation, denial, or infringement of due process. See Alabama Power Co. v. Turner, 575 So.2d 551, 553 (Ala. 1991) (citing Central Alabama Elec. Coop. v. Tapley, 546 So.2d 371 (Ala. 1989) )("[I]n order to challenge the constitutionality of a statute, an appellant must identify and make specific arguments regarding what specific rights it claims have been violated."). We conclude that the birth mother's argument does not establish that the provisions of the Alabama Adoption Code are unconstitutional.
V.
The birth mother argues that the August 9, 2016, protective order is *84 overly restrictive under the First Amendment to the United States Constitution. As a preliminary matter, we must determine the nature of the relief granted by the protective order. In a letter brief to this court, the adoptive mother argues that the protective order was entered pursuant to the probate court's contempt powers. "Contempt can be either civil or criminal." Alabama State Bar v. Tipler, 904 So.2d 1237, 1241 n. 4 (Ala. 2004) (citing State v. Thomas, 550 So.2d 1067, 1072 (Ala. 1989) ). Rule 70A(a)(2), Ala. R. Civ. P., defines "criminal contempt" and "civil contempt" as follows:
"(C) 'Criminal contempt' means either
"(i) Misconduct of any person that obstructs the administration of justice and that is committed either in the court's presence or so near thereto as to interrupt, disturb, or hinder its proceedings, or
"(ii) Willful disobedience or resistance of any person to a court's lawful writ, subpoena, process, order, rule, or command, where the dominant purpose of the finding of contempt is to punish the contemnor.
"(D) 'Civil contempt' means willful, continuing failure or refusal of any person to comply with a court's lawful writ, subpoena, process, order, rule, or command that by its nature is still capable of being complied with."
"Civil contempt seeks to compel or coerce compliance with orders of the court, while a criminal contempt is one in which the purpose of the proceeding is to impose punishment for disobedience of orders of the court." State v. Thomas, 550 So.2d at 1072. Rule 70A(e), Ala. R. Civ. P., provides:
"(e) Punishment for Criminal Contempt; Commitment in Cases of Civil Contempt.
"(1) Punishment for Criminal Contempt. The court may not punish a person for criminal contempt under the provisions of this rule by imprisonment or a fine exceeding the maximum term of imprisonment or maximum amount of fine provided by law.
"(2) Commitment in Cases of Civil Contempt. The court may order that a person who has been found to be in civil contempt be committed to the custody of the sheriff until that person purges himself or herself of the contempt by complying with the court's writ, subpoena, process, order, rule, or command."
Section 12-13-9, Ala. Code 1975, provides:
"(a) The probate court may issue show cause orders and attachment for contempts offered to the court or its process by any executor, administrator, guardian, or other person and may punish the person by a fine not exceeding twenty dollars ($20) and imprisonment not exceeding 24 hours, or both.
"(b) In all cases or other proceedings in the probate court of a county where the judge of probate is a licensed attorney in this state, the judge of probate shall have the same power to punish for civil contempt as granted to a judge of the circuit court pursuant to Section 12-11-30, [Ala. Code 1975,] or other law or as provided by the common law of this state."[9]
*85 Section 12-11-30(5), Ala. Code 1975, provides:
"(5) Contempts. The circuit court may punish contempts by fines not exceeding one hundred dollars ($100) and by imprisonment not exceeding five days. The power of the circuit court to enforce its orders and judgments by determinations of civil contempt shall be unaffected by this section."
Statutory limitations apply to sanctions for a finding of criminal contempt. Mullins v. Sellers, 80 So.3d 935, 942 (Ala. Civ. App. 2011). "On the other hand, sanctions for civil contempt may exceed those limits and may continue indefinitely until the contemnor performs as ordered." Pate v. Guy, 934 So.2d 1070, 1072 (Ala. Civ. App. 2005).
A judgment of civil contempt should include a means for the contemnor to purge himself or herself of contempt or the imposition of sanctions in order to coerce the contemnor into compliance with a prior order. T.L.D. v. C.G., 849 So.2d 200, 206 (Ala. Civ. App. 2002). The probate court's protective order merely requires certain actions by, and imposes certain restraints upon, the birth mother. The protective order does not offer the birth mother a choice between either following a previous order or following the requirements imposed in the protective order. The protective order does not contain a finding of contempt and does not mention any fine or incarceration as a sanction for criminal contempt. Because the protective order is not in the nature of an order finding a party in civil or criminal contempt, we do not construe the protective order as having been entered pursuant to the probate court's contempt powers.[10]
The protective order granted the adoptive mother's "Motion for Further Protective Order and Injunctive Relief," in which she sought an injunction. "An injunction is defined as '[a] court order commanding or preventing an action.' " Dawkins v. Walker, 794 So.2d 333, 335 (Ala. 2001) (quoting Black's Law Dictionary 788 (7th ed. 1999)); see, e.g., Kappa Sigma Fraternity v. Price-Williams, 40 So.3d 683, 690 (Ala. 2009) (concluding that trial court's order was injunctive in nature because it commanded a party to perform a specific action). The protective order enjoined the birth mother from directly or indirectly contacting the adoptive mother and from communicating with the media or on social media regarding the adoption case, the adoptive mother, and the child. The protective order also directed the birth mother to remove related social-media postings and to send a court-approved written message to those that had conducted social-media activities on the birth mother's behalf to remove related social-media postings *86 and accounts. We therefore construe the protective order as granting injunctive relief.
"A permanent injunction is '[a]n injunction granted after a final hearing on the merits,' Black's Law Dictionary 855 (9th ed. 2009), whereas a preliminary injunction is '[a] temporary injunction issued before or during trial to prevent an irreparable injury from occurring before the court has a chance to decide the case.' Id."
City of Gadsden v. Boman, 143 So.3d 695, 703 (Ala. 2013).
The protective order does not appear to be limited to the duration of the adoption proceedings but, instead, appears designed to extend beyond the entry of a final judgment in the adoption proceedings. This is further evidenced by the subsequent order denying the birth mother's August 23, 2016, motion seeking to limit the protective order on the basis that the case had concluded. Because of the enduring prohibitions and commands in the protective order, we conclude that the protective order granted permanent, not preliminary, injunctive relief.
Although a party must appeal within 14 days from a final decree of adoption or an order upon a petition to withdraw consent to an adoption pursuant to Ala. Code 1975, § 26-10A-14 and § 26-10A-26, respectively, the protective order does not address any of the issues disposed of by the summary judgment and the final decree of adoption in this case. The proceedings leading to the protective order appear to be separate from the adjudication of issues regarding the validity of the adoption of the child. The protective order is therefore a separately appealable final order. See J.B.M. v. J.C.M., 142 So.3d 676, 681 (Ala. Civ. App. 2013) (holding that order on Rule 60(b), Ala. R. Civ. P., motion in an adoption case was separately appealable from the decree of adoption). Rule 4(a)(1), Ala. R. App. P., provides for 42 days to appeal a final judgment. Id. at 682. We therefore note that the birth mother's notice of appeal was timely filed as to the injunction issued in the protective order. See Bekken v. Greystone Residential Ass'n, Inc., 227 So.3d 1201, 1213 (Ala. Civ. App. 2017) (noting that appellant had 42 days to appeal from an order construed as issuing a permanent injunction, citing Suther v. Jefferson County Board of Health, 456 So.2d 769, 771 (Ala. 1984) ).
However, as a threshold matter, we must determine whether the probate court had subject-matter jurisdiction to enter the protective order granting permanent injunctive relief, an equitable remedy. "Lack of subject matter jurisdiction may not be waived by the parties and it is the duty of an appellate court to consider lack of subject matter jurisdiction ex mero motu." Ex parte Smith, 438 So.2d 766, 768 (Ala. 1983) (citing City of Huntsville v. Miller, 271 Ala. 687, 127 So.2d 606 (1958) ; Payne v. Department of Indus. Relations, 423 So.2d 231 (Ala. Civ. App. 1982) ). " 'The principle of subject matter jurisdiction relates to a court's inherent authority to deal with the case or matter before it.' " Ex parte Safeway Ins. Co. of Alabama, Inc., 148 So.3d 39, 42 (Ala. 2013) (quoting 21 C.J.S. Courts § 11 (2006) ). "The jurisdiction of our probate courts ' "is limited to the matters submitted to [them] by statute." ' " Russell v. Fuqua, 176 So.3d 1224, 1227 (Ala. 2015) (quoting AltaPointe Health Sys., Inc. v. Davis, 90 So.3d 139, 154 (Ala. 2012), quoting in turn Wallace v. State, 507 So.2d 466, 468 (Ala. 1987) ); see also § 12-13-1(a), Ala. Code 1975 ("The probate court ... shall have original and general jurisdiction as to all other matters [not specifically mentioned in § 12-13-1 ] which may be conferred upon them by statute, unless the statute so conferring *87 jurisdiction expressly makes the jurisdiction special or limited."). "A probate court 'cannot take jurisdiction of a cause or administer remedies except as provided by statute.' " Hughes v. Branton, 141 So.3d 1021, 1027 (Ala. 2013) (quoting Lappan v. Lovette, 577 So.2d 893, 896 (Ala. 1991) ).
"Adoption is a purely statutory right in Alabama. Evans v. Rosser, 280 Ala. 163, 190 So.2d 716 (1966). Consequently, a probate court has only limited jurisdiction in adoption proceedings ...." Meyers v. Smith, 518 So.2d 734, 735 (Ala. Civ. App. 1987). Neither party directs us to, and we are not aware of any, statutory authority that provides the probate court in Mobile County with equity jurisdiction in adoption proceedings.[11] "Because adoption in Alabama is purely statutory, statutes governing adoption must be strictly enforced." Ex parte C.V., 810 So.2d 700, 726 (Ala. 2001) (Johnstone, J., concurring specially). Section 26-10A-31 provides:
"(a) After the petition is filed and prior to the entry of the final decree, the records in adoption proceedings shall be open to inspection only by the petitioner or his or her attorney, the investigator appointed under Section 26-10A-19, any attorney appointed for the adoptee under Section 26-10A-22, and any attorney retained by or appointed to represent the adoptee. Such records shall be open to other persons only upon order of court for good cause shown.
"(b) All hearings in adoption proceedings shall be confidential and shall be held in closed court without admittance of any person other than interested parties and their counsel, except with leave of court.
"(c) After the final decree of adoption has been entered, all papers, pleadings, and other documents pertaining to the adoption shall be sealed, kept as a permanent record of the court, and withheld from inspection except as otherwise provided in this section and in subsection (c) of Section 22-9A-12. No person shall have access to such records except upon order of the court in which the decree of adoption was entered for good cause shown except as provided in subsection (c) of Section 22-9A-12.
"(d) When the court issues the adoption order, all licensed agencies or individuals shall send a sealed information summary sheet and the non-identifying information referred to in subsection (g) in a separate summary sheet to the State Department of Human Resources. The following information shall be included:
"(1) Birthname and adoptive name;
"(2) Date and place of birth of person adopted, except in the case of abandonment;
"(3) Circumstances under which the child came to be placed for adoption;
"(4) Physical and mental condition of the person adopted, insofar as this can be determined by the aid of competent medical authority;
"(5) Name and last known address of natural parents, dates of birth, and Social Security numbers, if known;
"(6) Age of the natural parents at child's birth;
"(7) Nationality, ethnic background, race, and religious preference of the natural parents;
*88 "(8) Educational level of the natural parents;
"(9) Pre-adoptive brother/sister relationships;
"(10) Whether the identity and location of the natural father is known or ascertainable.
"(e) The State Department of Human Resources and the investigating agency's adoption records must be kept for a minimum term of 75 years. If a licensed child placing agency ceases to operate in Alabama, all adoption records of the agency, including those of the child, the natural family, and the adoptive family, shall be transferred to the Department of Human Resources.
"(f) Except as otherwise provided in this section and in subsection (c) of Section 22-9A-12, all files of the investigating office or agency appointed by the court under Section 26-10A-19 shall be confidential and shall be withheld from inspection except upon order of the court for good cause shown.
"(g) Notwithstanding subsection (f) of this section, the State Department of Human Resources or the licensed investigating agency appointed by the court pursuant to Section 26-10A-19(b) and (c), shall furnish, upon request, to the petitioners, natural parents, or an adoptee 19 years of age or older, nonidentifying information which shall be limited to the following:
"(1) Health and medical histories of the adoptee's natural parents;
"(2) The health and medical history of the adoptee;
"(3) The adoptee's general family background, including ancestral information, without name references or geographical designations;
"(4) Physical descriptions;
"(5) The length of time the adoptee was in the care and custody of one other than the petitioner; and
"(6) Circumstances under which the child comes to be placed for adoption.
"(h) Notwithstanding subsection (f), if either the natural mother or the natural or presumed father have given consent in writing under oath to disclosure of identifying information as defined in subsection (d) and which is not otherwise provided in this section and in subsection (c) of Section 22-9A-12, the State Department of Human Resources or a licensed child placing agency shall release such identifying information.
"(i) If the court finds that any person has a compelling need for nonidentifying information not otherwise available under subsection (e) of this section which only can be obtained through contact with the adoptee, the adoptee's parents, an alleged or presumed father of the adoptee, or the adoptee's adoptive parents, the court shall direct the agency or a mutually agreed upon intermediary, to furnish such information or to establish contact with the adoptee, the adoptee's natural parents, the alleged or presumed father of the adoptee, or the adoptive parents of the adoptee in order to obtain the information needed without disclosure of identifying information to or about the applicant. The information then shall be filed with the court and released to the applicant within the discretion of the court. However, the identity and whereabouts of the person or persons contacted shall remain confidential.
"(j) Notwithstanding any subsection of this section to the contrary, when an adult adoptee reaches the age of 19, the adoptee may petition the court for the disclosure of identifying information as *89 defined in subsection (d) and which is not otherwise provided for in this section or in subsection (c) of Section 22-9A-12, if a natural or presumed parent has not previously given consent under subsection (h). The court shall direct an intermediary to contact the natural parents to determine if the natural parents will consent to the release of identifying information. If the natural parents consent to the release of identifying information the court shall so direct. If the natural parents are deceased, cannot be found, or do not consent to the release of identifying information then the court shall weigh the interest and rights of all of the parties and determine if the identifying information should be released without the consent of the natural parents."
Although § 26-10A-31 provides for the confidentiality of the records and proceedings in an adoption case, the legislature did not include any provisions authorizing a probate court to administer a remedy for the violation of § 26-10A-31.
"In the absence of specific statutory authority, probate courts lack the authority to issue injunctions: 'The probate court is a court of law and, therefore, generally does not possess jurisdiction to determine equitable issues.' Lappan v. Lovette, 577 So.2d 893, 896 (Ala. 1991). Probate courts cannot 'administer remedies except as provided by statute.' Id."
Kish Land Co. v. Thomas, 42 So.3d 1235, 1237 (Ala. Civ. App. 2010). We conclude that the probate court lacked subject-matter jurisdiction to enter the protective order or the September 6, 2016, order denying the parties' motions regarding the protective order.
Our holding does not pertain to whether the birth mother's actions warranted injunctive relief in favor of the adoptive mother. The probate court was simply not a court with the subject-matter jurisdiction to grant the injunctive relief requested by the adoptive mother in this type of case. " ' "A judgment entered by a court lacking subject-matter jurisdiction is absolutely void and will not support an appeal; an appellate court must dismiss an attempted appeal from such a void judgment." ' " AltaPointe, 90 So.3d at 158 (quoting MPQ, Inc. v. Birmingham Realty Co., 78 So.3d 391, 394 (Ala. 2011), quoting in turn Vann v. Cook, 989 So.2d 556, 559 (Ala. Civ. App. 2008) ). Accordingly, we dismiss the portion of the appeal concerning the protective order and the September 6, 2016, order.
APPLICATION GRANTED; OPINION OF DECEMBER 1, 2017, WITHDRAWN; OPINION SUBSTITUTED; APPEAL DISMISSED IN PART; AFFIRMED.
Pittman, J., concurs.
Moore, J., concurs in part and concurs in the result in part, with writing.
Thompson, P.J., and Thomas, J., concur in the result, without writings.
MOORE, Judge, concurring in part and concurring in the result in part.
I agree with that aspect of the main opinion that dismisses the appeal from the August 9, 2016, injunctive order. I concur in the result insofar as the main opinion affirms the summary judgment entered by the probate court in favor of K.G.S. ("the adoptive mother") on the contest of the adoption filed by K.L.R. ("the birth mother").
The evidence indicates that the birth mother contacted Donna Ames, "an attorney [who is] also the president of Adoption Rocks, Inc., a nonprofit entity that aids in facilitating adoptions of unborn children," seeking assistance with placing her unborn child ("the child") for adoption. 234 *90 So.3d at 70. According to an affidavit filed by the birth mother in an adoption contest she filed in the Mobile Probate Court ("the probate court"), at the initial meeting between the birth mother and Ames, "Ames informed [the birth mother] that she had [the birth mother's] best interests at heart and that she would take care of all of the legal paperwork." The birth mother stated in her affidavit that, from that conversation, she had "understood that ... Ames was representing [her] as legal counsel in an adoption proceeding." Ames facilitated a meeting between the birth mother and the adoptive mother, whom Ames represented, and the birth mother executed a consent to the adoption of the child by the adoptive mother on February 6, 2015.
The adoptive mother subsequently filed a request in the probate court for a hearing regarding the birth mother's prebirth consent to the child's adoption. The probate court held a hearing on February 6, 2015; the transcript of that hearing indicates that the probate court explained the effects of the prebirth consent to the birth mother and that it also informed her of the 5-day and 14-day periods set forth in Ala. Code 1975, § 26-10A-13(a) and (b), during which she could withdraw her consent.
According to the birth mother, on April 27, 2015, Ames and the adoptive mother attended a doctor's appointment with the birth mother. At that time, the birth mother inquired as to how the adoption process would proceed after the child was born. In response, Ames informed the birth mother that she would deliver to the birth mother at the hospital the paperwork that she would need to sign and that "nothing would be finalized until she did so." According to the birth mother, based on that conversation, she had believed that the adoption would not be finalized until she had signed the paperwork.
The birth mother averred in her affidavit that, on May 12, 2015, she informed Ames that she "had made a final decision to keep [the] child and not to go through with the adoption." Those facts should have led Ames to conclude that the birth mother had withdrawn her consent to the adoption; indeed, a message sent via Facebook, a social-media Web site, from Ames to the birth mother on May 20, 2015, confirms that Ames understood that the birth mother had decided to parent the child rather than give up the child for adoption.
The birth mother further averred that, on May 21, 2015, Leigh Hurley, the birth mother's counselor, informed the birth mother that Ames was not acting as the birth mother's attorney. The child was born on May 28, 2015. Despite having knowledge that Ames was not her attorney, the birth mother did not file her formal withdrawal of her consent to the adoption until long after the child was born and outside the 5-day and 14-day periods set forth in § 26-10A-13(a) and (b). Instead, the birth mother waited until after the adoptive mother had filed, on June 15, 2015, a petition to adopt the child, and, thereafter, on June 19, 2015, the birth mother filed a notice of the withdrawal of her consent and a contest to the adoption. The adoptive mother filed a motion for a summary judgment as to the birth mother's adoption contest, which the probate court granted. The probate court subsequently entered a "Final Decree of Adoption."
On appeal, the birth mother argues that her tardy filing of the withdrawal of her consent to the adoption should be excused because, she says, she was misled by Ames regarding her representative capacity. The record indicates, however, that the birth mother was informed by her counselor on May 21, 2015, that Ames was not acting as her attorney; therefore, the birth mother *91 could have filed the withdrawal of her consent within the periods set forth in § 26-10A-13(a) and (b). The birth mother's confusion as to when the adoption would be "finalized" is not a legally sufficient reason for failing to file the withdrawal of her consent to the adoption, especially considering (1) that she had been directly informed by the probate court, at the February 6, 2015, hearing, of the deadlines for withdrawing her prebirth consent and (2) that nothing Ames told the birth mother was untrue or should have led the birth mother to reasonably believe that filing the withdrawal of her consent was no longer necessary. In other words, it was unreasonable for the birth mother to interpret Ames's statements as excusing the birth mother from filing the withdrawal of her consent to the adoption because Ames never told the birth mother that the filing of the withdrawal of her consent was not required. See, e.g., Bourgeois v. Hughes, 55 So.3d 1195, 1202 (Ala. Civ. App. 2010) (explaining the reasonable-reliance standard applicable to claims of fraud).
Section 26-10A-14(a)(2), Ala. Code 1975, provides that a withdrawal of a consent or a relinquishment to an adoption may be filed outside the 5-day and 14-day periods set forth in § 26-10A-13(a) and (b)"upon a showing that the consent or relinquishment was obtained by fraud, duress, mistake, or undue influence on the part of a petitioner or his or her agent or the agency to whom or for whose benefit it was given." I believe that § 26-10A-14(a)(2) is written broadly enough that the birth mother could have withdrawn her consent to the adoption by proving that she had been prevented from timely filing her withdrawal due to fraud. However, in this case, the birth mother, in opposition to the adoptive mother's summary-judgment motion, failed to present evidence creating a genuine issue of material fact on this point because nothing Ames had said to the birth mother prevented the birth mother from timely filing the withdrawal of her consent to the adoption with the probate court. See, e.g., General Motors Corp. v. Kilgore, 853 So.2d 171, 173 (Ala. 2002) (quoting American Liberty Ins. Co. v. AmSouth Bank, 825 So.2d 786, 790 (Ala. 2002), quoting in turn Nationwide Prop. & Cas. Ins. Co. v. DPF Architects, P.C., 792 So.2d 369, 372 (Ala. 2000) ) (" ' "Once a party moving for a summary judgment establishes that no genuine issue of material fact exists, the burden shifts to the nonmovant to present substantial evidence creating a genuine issue of material fact." ' "). Based on the foregoing, I concur in the result reached by the main opinion affirming the summary judgment entered by the probate court in favor of the adoptive mother on the birth mother's contest of the adoption.
Alabama Supreme Court 1170580

On July 31, 2015, the birth mother filed a "Supplemental Motion to Recuse," which the probate court denied in an order entered on August 3, 2015.

On the "Table of Decisions of the Alabama Court of Civil Appeals Without Published Opinions (Compiled September 30, 2015)," the disposition of this case is reported as "Dismissed."

See § 26-10A-37, Ala. Code 1975, providing for the application of the Alabama Rules of Civil Procedure in adoption proceedings.

As discussed later in this opinion, the record on appeal originally showed that the summary judgment was entered on August 23, 2016, thus indicating that the appeal was untimely.

As discussed later in this opinion, the record on appeal originally showed that the final decree of adoption was entered on August 23, 2016, more than 14 days before the notice of appeal was filed. See § 26-10A-26, Ala. Code 1975.

The adoptive mother filed motions requesting injunctive relief as well as motions seeking a finding of contempt. We recount the procedural history of the parties' contempt motions and responses, and the probate court's rulings, because the birth mother argues on appeal that the probate court entered the "protective order" pursuant to its contempt powers.

As noted earlier, in Ex parte K.R., 210 So.3d 1106, 1113 (Ala. 2016), the supreme court held that all the orders entered by Druhan were void.

We discuss the probate court's lack of equity powers later in this opinion.

We note that the probate court entered the protective order before the amendment to § 12-13-9 on May 26, 2017. The version of § 12-13-9 in effect during the entry of the protective order provided:
"The probate court may issue show cause orders and attachment for contempts offered to the court or its process by any executor, administrator, guardian, or other person and may punish the same by fine not exceeding $20.00 and imprisonment not exceeding 24 hours, or both."
We have included the current version of § 12-13-9 as amended on May 26, 2017, and § 12-11-30(5), Ala. Code 1975, in order to more fully discuss the nature of an order finding a party in contempt.

If we were to construe the protective order as a contempt judgment, the probate court would have lacked subject-matter jurisdiction to enter the order. In Ex parte K.R., 210 So.3d 1106, 1113 (Ala. 2016), our supreme court held that all orders entered by Druhan were void. As a result, the probate court would have lacked a valid underlying order on which to base a finding of contempt in the protective order, and we note the absence of subject-matter jurisdiction to find the birth mother in contempt solely for violating § 26-10A-31, Ala. Code 1975, which provides for confidentiality regarding the records and proceedings in an adoption case. See AltaPointe Health Sys., Inc. v. Davis, 90 So.3d 139, 157-58 (Ala. 2012) (holding that a probate court did not have subject-matter jurisdiction to find a party in contempt for violating a statute).

We note that, because it is in Mobile County, the probate court has general and equity jurisdiction in the administration of estates pursuant to Act No. 91-131, Ala. Acts 1991 (amending Act No. 974, § 5, Ala. Acts 1961 (Reg. Session)). Jett v. Carter, 758 So.2d 526, 530 (Ala. 1999).